UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORTEZ ROLAND DAVIS,

    Petitioner,                                 CASE NO. 01-CV-72747
                                                  HONORABLE DENISE PAGE HOOD
v.                                             UNITED STATES DISTRICT JUDGE

ANDREW JACKSON,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

**I.    INTRODUCTION**

Cortez Roland Davis, ("Petitioner"), presently confined at the Mound Road Correctional Facility in Detroit, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, though counsel Marla R. McCowan of the Michigan State Appellate Defender Office, in which he challenges his conviction for first-degree felony murder, M.C.L.A. 750.316; armed robbery, M.C.L.A. 750.529; assault with intent to commit armed robbery, M.C.L.A. 750.89; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**II.    FACTS**

Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court. Petitioner's counsel has provided a detailed statement of facts in the petition for writ of habeas corpus. [1] The Court will therefore accept the factual allegations contained within

---

[1] *See* Memorandum in Support of Amended Petition for Writ of Habeas Corpus, pp. 1-8.

1

the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002).

Martin Arnold testified that he and the decedent, Raymond Derrick Davis, Jr. went to a liquor store to purchase something to drink on December 14, 1993. The men were approached from behind by two individuals who were both armed with guns. Arnold testified that one of these men was Petitioner. Arnold testified that he had seen Petitioner before in the neighborhood. The other man with Petitioner took the decedent to the other side of the street while Petitioner remained with Arnold. Petitioner ordered Arnold to empty his pockets. Arnold complied and threw a couple of dollars, some change, and an unidentified item to the ground. Arnold testified that Petitioner never retrieved his property from the ground, although he later changed his testimony and indicated that Petitioner may have picked up the money, but Arnold acknowledged that he could not remember Petitioner doing this. Arnold testified that Petitioner walked across the street to the area where the other gunman and decedent were standing, but ordered Arnold to stay where he was. Arnold denied that Petitioner told him to "be cool" and he would not be hurt.

Arnold testified that the decedent started running after he removed his coat. Arnold testified that both Petitioner and the other gunman began shooting at the victim as he attempted to flee. Arnold testified that he heard four or five shots. After the shooting, Petitioner and his accomplice took the decedent's jacket.

Arnold testified that the man who stayed with him had braids and a bandanna wrapped around these braids. Arnold denied telling the police on the day of the shooting that the gunman had jheri curls. Arnold was uncertain of the robber's height, but claimed he knew the robber's

2

identity. Nor was he certain as to the caliber of the robber's gun, but he knew it was a handgun.

Edward Castelow testified that he was at a house a few days after the shooting in the company of several other young men, including Michael Scott, Deon, and Petitioner, whom he knew as "Snake." Castelow testified that Michael Scott admitted that he shot someone down on Fenkell Street. Scott informed Castelow that he had seen two men and told one of them to take off his coat. Scott told Castelow that the other man ran away. Scott admitted shooting the coat's owner when he tried to run. Although Michael Scott told Castelow that he and someone else committed the offense, Castelow testified that he did not name his accomplice. Castelow admitted, however, that he told the police that Scott had named Petitioner as the other participant in the shooting. Castelow testified that Petitioner was within earshot when Scott described the killing, and "just sat there smiling."

Detroit Police Sergeant Arlie Louvier testified that Petitioner made a statement to him following his arrest. Petitioner first denied any knowledge of the shooting. Petitioner denied that he was the right "Snake" and further denied knowing Edwin Castelow. Petitioner also produced a bus ticket and informed Louvier that he was not in town in December. Louvier testified that this last answer stuck out because he never mentioned the month in which the shooting occurred to Petitioner. Louvier told Petitioner that he believed that he knew about the shooting because Petitioner knew that the shooting took place in December and because Petitioner's bus ticket was dated two days after the shooting. Louvier also confronted Petitioner with Castelow's statement. Petitioner then made a statement regarding his involvement in the shooting.

Petitioner told Louvier that he, Michael Scott, and "Shay Man" were

3

driving in "Shay Man's" car toward Fenkell when Scott ordered "Shay Man" to stop the car because Scott was "fixin' to holler" at two men who were walking in the area. Petitioner acknowledged to Louvier that he interpreted Scott's statement to mean that they were going to rob these two men. "Shay Man" told Petitioner to go with Scott to back him up. Scott handed Petitioner a .38 caliber gun. Petitioner indicated to Louvier that he and Scott approached the two men from behind. Scott pulled out a sawed-off shotgun and Petitioner pulled out the gun Scott gave him. Scott ordered the men to empty their pockets slowly. The decedent ran toward an alley, but Scott chased him and caught him. The other man emptied his pockets, but only had a bottle and lighter, which he threw on the ground. Petitioner claims that he told this man "to be cool" and he would not get hurt. Petitioner went across the street to where Scott was with the decedent. Petitioner claimed that he urged Scott to leave. As Petitioner said this, the decedent began running again, and Scott shot him. Petitioner fled and went to Scott's girlfriend's house. Petitioner told Louvier that Scott took the decedent's jacket. Petitioner denied taking anything from the other man. Petitioner denied shooting anyone.

 Petitioner testified on his own behalf at trial. Petitioner admitted being present at the scene, but denied any participation in the robbery. Petitioner claimed that he refused to accept the .38 caliber gun from Scott and that "Shay Man" took it instead. Petitioner began walking home while "Shay Man" and Scott approached the other two men. Scott had a sawed-off shotgun. The decedent ran and Scott chased him, while "Shay Man" remained with Arnold. Shortly after Scott caught up with the decedent, Petitioner heard gunshots. When Petitioner heard these shots, he ran from the area. Because he ran, Petitioner did not see Scott take any property from the decedent, but he later observed him in possession of the decedent's coat.

4

Petitioner denied doing anything to help or encourage Scott and "Shay Man."

Petitioner further testified that his trial testimony was the same version of events that he gave to Detective Louvier during his police interrogation. Although Petitioner admitted that he signed and initialed the statement that he gave to Louvier, he claimed that he did so without reading it.

On rebuttal, the prosecutor introduced evidence that Petitioner had testified at an evidentiary hearing that most of his statement to the police was an accurate reflection of what he had told them. However, Petitioner had also testified at this hearing that some portions of the statement were not an accurate reflection of what he told police and that he did not read the statement after it was typed by Louvier.

Petitioner's conviction was affirmed on appeal, although the case was remanded to the trial court for a hearing on the admissibility of Petitioner's statement to the police. *People v. Davis,* Nos. No. 183428, 192234 (Mich.Ct.App. June 24, 1997); *lv. den.* 459 Mich. 863; 584 N.W. 2d 923 (1998). On remand, the trial court found that there was probable cause to arrest Petitioner, so as to support the admissibility of his statement to the police. The Michigan Court of Appeals denied Petitioner's application for leave to appeal. Petitioner did not seek leave to appeal to the Michigan Supreme Court.

On or about July 23, 2001, Petitioner filed a post-conviction motion for relief from judgment with the trial court pursuant to M.C.R. 6.500, *et. seq.* Petitioner simultaneously filed a petition for writ of habeas corpus with this court. The trial court granted Petitioner's motion for relief from judgment on July 18, 2002, finding that there was instructional error. The Michigan Court of Appeals vacated the order granting post-conviction relief and remanded the motion to

5

the trial court for a determination of whether Petitioner could satisfy the "cause" and "prejudice" requirements of M.C.R. 6.508(D) for obtaining post-conviction relief. *People v. Davis,* No. 242997 (Mich.Ct.App. September 18, 2002). On remand, the trial court again granted Petitioner post-conviction relief. The Michigan Court of Appeals reversed the trial court's decision to grant relief and reinstated the conviction. *People v. Davis,* No. 246847 (Mich.Ct.App. August 31, 2004)(Cooper, J. dissenting). The Michigan Supreme Court denied Petitioner leave to appeal. *People v. Davis,* 472 Mich. 927; 697 N.W.2d 525 (2005).

On March 12, 2007, this Court granted Petitioner's motion to reopen the habeas petition and ordered responsive pleadings from respondent. Petitioner seeks habeas relief on the following grounds:

> I. Insufficient evidence to support Petitioner's conviction for first-degree felony murder.
>
> II. Petitioner was deprived of a fair trial by prosecutorial misconduct.
>
> III. Petitioner was denied due process when the trial court permitted the prosecutor to impeach Petitioner with his trial counsel's opening statement.

**III.    STANDARD OF REVIEW**

> 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

IV. **ANALYSIS**

   A. **The statute of limitations issue.**

As part of her answer, respondent's counsel contends that the petition for writ of habeas corpus should be dismissed as untimely because it was not filed in compliance with the Antiterrorism and Effective Death Penalty Act's (AEDPA) statute of limitations found in 28 U.S.C. § 2244(d)(1). Respondent notes that when Petitioner filed his first petition for writ of habeas corpus, 347 days had already elapsed under the one year limitations period. When the Michigan Supreme Court denied Petitioner's post-conviction appeal on June 16, 2005, Petitioner had only eighteen days remaining under the one year limitations period, or until August 5, 2005, to timely move to re-open his petition for writ of habeas corpus. Because Petitioner did not move to re-open his petition until June 16, 2006, respondent contends that the instant petition should be dismissed on timeliness grounds.

In her reply to respondent's answer, Petitioner's counsel contends that the instant

7

petition is timely, because her motion to re-open the habeas petition was filed within the specific terms of this Court's order from March 18, 2003, which indicated that Petitioner could move to re-open his petition to avoid potential statute of limitations issues.

Respondent's argument that the instant petition is untimely has some merit. The Sixth Circuit has indicated that a habeas petitioner is entitled to equitable tolling of the limitations period during the time that his or her original habeas petition was filed in the federal court, provided that the habeas petitioner filed his state post-conviction motion with the state courts within thirty days of the federal court's dismissal of the original habeas petition and returned to federal court no later than thirty days after the conclusion of state post-conviction review. *See Griffin v. Rogers,* 308 F. 3d 647, 653 (6th Cir. 2002)(citing *Palmer v. Carlton*, 276 F. 3d 777, 781 (6th Cir. 2002)). In this case, Petitioner did not move to re-open his original habeas petition until one year had elapsed from the Michigan Supreme Court's denial of his post-conviction appeal. Because Petitioner did not re-file his habeas petition within thirty days of the conclusion of post-conviction review in this case, he is probably not entitled to equitable tolling of the limitations period for the time that his original habeas petition was pending in the federal court. *Palmer,* 276 F. 3d at 781-82; *See also Godbolt v. Russell,* 82 Fed. Appx. 447, 452 (6th Cir. 2003).

Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F. 3d 1155, 1162 (8th Cir. 1999)(internal citations omitted). Because the statute of limitations does not constitute a jurisdictional bar to habeas

review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F. 3d 426, 429, n. 2 (6th Cir. 2006)(quoting *Trussell v. Bowersox,* 447 F. 3d 588, 590 (8th Cir. 2006)). Simply put, this Court need not resolve the dispute over the timeliness of Petitioner's habeas application. Assuming without deciding that the current petition was timely, Petitioner's habeas application fails on the merits. *See Ahart v. Bradshaw,* 122 Fed. Appx. 188, 192 (6th Cir. 2005).

**B. Claim # 1. The sufficiency of evidence claim.**

Petitioner first contends that there was insufficient evidence to convict him of first-degree felony murder.

In rejecting this claim, the Michigan Court of Appeals noted that Arnold testified that both Petitioner and his co-defendant fired their weapons at the decedent. Under Michigan law, the jury may infer malice from the use of a deadly weapon. The Michigan Court of Appeals further noted that Petitioner admitted in his confession that he participated in the armed robbery knowing that his co-defendant was in possession of a sawed-off rifle. The Michigan Court of Appeals concluded that the jury could also infer the requisite malice from the fact that Petitioner willingly participated in an armed robbery with the knowledge that his companion intended to cause great bodily harm. Finally, there was evidence that after the incident, Petitioner smiled as the co-defendant bragged about the shooting. The Michigan Court of Appeals concluded that this evidence was sufficient to sustain Petitioner's conviction for felony murder. *Davis,* No. 192234, * 6 (internal citations omitted).

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any

9

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 686 (E.D. Mich. 2003). Finally, in making a determination whether the state court's application of the *Jackson* standard in resolving Petitioner's sufficiency of evidence claim was contrary to, or an unreasonable application of, Supreme Court precedent, this Court must afford the state court's findings of facts a presumption of correctness unless Petitioner can establish by clear and convincing evidence that the state court's factual determination was erroneous. *See Williams v. White,* 183 F. Supp. 2d 969, 974 (E.D. Mich. 2002)(internal citations omitted).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;
2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006)(citing *Carines*, 460 Mich. at 757-58).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)).

In the present case, the Michigan Court of Appeals' rejection of Petitioner's sufficiency of evidence claim was not an unreasonable application of clearly established federal law. The evidence established that Petitioner agreed to participate in an armed robbery with his co-defendant. Petitioner was armed with a firearm and knew that the co-defendant was armed with a sawed-off rifle. A number of cases have held that a defendant's participation in an armed robbery, while either he or his co-defendants were armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur, to support a finding that the defendant acted with malice aforethought, so as to support a conviction for felony-murder on an aiding and abetting theory. *See Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)*; People v. Turner,* 213 Mich. App. 558, 572-73; 540 N. W. 2d 728 (1995)*; People v. Hart*, 161 Mich. App. 630, 635; 411 N.W. 2d 803 (1987); *Meade,* 265 F. Supp. 2d at 858-59; *See also Redmond v. Jackson,* 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003)(Petitioner not entitled to tolling of the AEDPA's statute of limitations on a claim that he was actually

innocent of felony-murder, finding that Petitioner's act of providing a firearm to be used in an armed robbery demonstrated a wanton and wilful disregard of the fact that a person could be killed or suffer great bodily harm during the course of the robbery).

Petitioner further claims that the evidence was insufficient to convict him because the victim's credibility was questionable and he was the sole eyewitness to the crime. A court that reviews a sufficiency of evidence claim does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a Petitioner's claim. *Id.*

In addition, the fact that Matthew Arnold was the only witness to testify against Petitioner regarding the incident which lead to his conviction does not render the evidence insufficient to convict. The testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction, so long as the prosecution presents evidence which establishes the elements of the offense beyond a reasonable doubt. *Brown v. Davis,* 752 F. 2d 1142, 1144-45 (6th Cir. 1985); *See also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 669 (E.D. Mich. 2004). Most importantly, Petitioner confessed to participating in the robbery and the shooting. Petitioner's confession provides "overwhelming evidence" of Petitioner's guilt and is enough to support his convictions. *See United States v. Redditt,* 87 Fed.

Appx. 440, 445 (6th Cir. 2003). "A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." *Id.* (*quoting Arizona v. Fulminante*, 499 U.S. 279, 296 (1991)).

Petitioner is therefore not entitled to habeas relief on his first claim.

**C. Claim # 2. The prosecutorial misconduct claims.**

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.

Respondent contends that Petitioner's prosecutorial misconduct claims are procedurally defaulted, because he failed to object to the prosecutor's remarks at trial. Petitioner's current counsel alleges that trial counsel was ineffective for failing to object to this alleged misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

When a Petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether

13

they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

Petitioner first claims that the prosecutor improperly evoked juror sympathy for the decedent, with the following comment in her closing argument:

> "Ladies and gentlemen, this case, the facts are as simply — they're brutally simple. They're brutally simple and simple in their brutality. Raymond Derrick Davis, Jr., brought [sic, bought] a Fila Jacket and paid for it with his life. This defendant, Cortez Davis helped exact that price from Derrick Davis." (Tr. May 10, 1994, pp. 3-4).

In the present case, the prosecutor's closing argument took up thirty one pages of transcripts. (*Id*. at pp. 3-22, 52-62). The prosecutor's brief remark about the victim was isolated and would not entitle Petitioner to habeas relief. *See Rodriguez v. Peters*, 63 F. 3d 546, 565 (7th Cir. 1995)(victim impact comments comprising one of thirty five pages of a closing argument did not render trial unfair).

Moreover, even if the prosecutor's appeals to the jury's emotions or sympathies were improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002). This portion of Petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. May 10, 1994, p. 62). *Id., See also Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999).

Petitioner further claims that the prosecutor made a mistake of law, argued facts not in

14

evidence, and vouched for the interrogating police officer when she argued that Petitioner's mere possession of a gun demonstrated an intent to kill and that the police officer would have fabricated a better confession if he had made up a false confession, as Petitioner's trial counsel had argued.

The actions of a prosecutor in misrepresenting facts in evidence can amount to substantial error, because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo,* 416 U.S. 637, 646 (1974)). In addition, asserting facts that were never admitted into evidence may mislead a jury in a prejudicial way. *Id.* However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000).

In addition, a prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted). The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir.

1999)(internal citations omitted). It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd,* 209 F. 3d at 537. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner first contends that the prosecutor argued facts not in evidence and misstated the law when she argued that Petitioner's mere possession of a firearm demonstrated an intent to kill. Petitioner has failed to show that the prosecutor's comments were a misstatement of the law. Use of a lethal weapon will support an inference of an intent to kill under Michigan law. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing to *People v. Turner*, 62 Mich. App. 467, 470; 233 N. W. 2d 617 (1975)). Therefore, the prosecutor's comments were not a misstatement of the law. Moreover, the trial court cured any arguable impropriety by instructing the jurors that what the lawyers said was not the law and that they should only listen to the court's instructions regarding the law (*Id.* at p. 63). *See U.S. v. Garcia-Meza,* 403 F. 3d 364, 372-73 (6th Cir. 2005).

Petitioner further claims that the prosecutor argued facts not introduced into evidence and vouched for Detective Louvier by claiming that had the police fabricated Petitioner's confession, as Petitioner's counsel had argued, they would have made up a better confession.

Petitioner's claim is without merit. When viewed within the context of the entire closing argument, the prosecutor's remarks did not amount to improper vouching or suggest that she had any special knowledge of Officer's Louvier's truthfulness. Instead, the

prosecutor's comments amounted to a rhetorical question or remark, which is not improper within the broad scope of a closing argument. *See United States v. Green,* 305 F. 3d 422, 430 (6th Cir. 2002). The prosecutor's rhetorical remark that had the police wanted to fabricate a confession that they would have come up with a better one was not flagrant or misleading but simply asked the jurors to make a common-sense inference from the evidence presented. *See U.S. v. Smith,* 89 Fed. Appx. 494, 497-98 (6th Cir. 2004). Further, the prosecutor's remark was not improper, because it went to the question of whether the jury could reasonably infer from the evidence that Petitioner's version of his statement to the police was true. *See U.S. v. Vaughn,*

12 Fed.Appx. 188 (6th Cir. 2000)(prosecutor's closing argument, that defendant's testimony was not logical because the police officers would gain nothing from planting a gun on his person, and consequently, that defendant must not be telling the truth, was proper, because the argument went to the question of whether the jury could reasonably infer from the evidence that defendant's version of the story was true).

Finally, any alleged vouching for the credibility of witnesses did not rise to the level of a due process violation, in light of the fact that the jury was informed by the judge that the prosecutor's arguments were not evidence and the judge instructed jury as to the factors to consider in evaluating the credibility of the witnesses' testimony (*Id.* at p. 65, 68-70). *Byrd,* 209 F. 3d at 537-38.

Finally, because the prosecutor's conduct was not improper, counsel's failure to object to the prosecutor's comments was not ineffective assistance of counsel. *See Meade,* 265 F. Supp. 2d at 866. Petitioner is not entitled to habeas relief on his second claim.

### D. Claim # 3. The improper impeachment claim.

Petitioner lastly claims that he was deprived of his due process right to a fair trial when the prosecutor was permitted to impeach Petitioner's testimony by asking him about his defense counsel's opening statement.

Federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

The cross-examination of a habeas petitioner by a prosecutor about inconsistencies between his testimony and the theory of the defense laid out by defense counsel in his or her opening statement does not rise to the level of a violation of the federal constitution so as to provide a ground for federal habeas relief. *See Hoxsie v. Kerby,* 108 F. 3d 1239, 1244 (10th Cir. 1997). Accordingly, Petitioner is not entitled to habeas relief on his final claim.

### V. CONCLUSION

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: April 30, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 30, 2008, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager